## FRANKLIN BABCOCK v. PETER DIETER.

INSTRUCTIONS AND VERDICT, *Erroneous.* On April 10, 1879, M. became the purchaser at sheriff's sale of certain land, and on June 3, 1879, received a sheriff's deed for the land, which deed was duly recorded on the same day. At that time the land was in the possession of certain tenants of A., who was the executor of the estate to which the land had previously belonged. Afterward, and about November 1, 1879, said executor A. sold or agreed to sell 600 bushels of corn to D., but there was no understanding or agreement between A. and D. as to where the corn was grown, or where it was to come from. Afterward, M. gave notice to A. and D., and the tenants, that he claimed the rent corn grown that year on said premises, and that if D. should receive the same, or any part thereof, on the contract between A. and D., he, M., would hold D. personally responsible. But D., notwithstanding such notice, received a portion of such rent corn knowing it to be such, or at least having sufficient knowledge of the facts to put him upon inquiry. *Held*, That D. is

responsible to M. or his assignee for the value of such corn; *and further held,* that certain instructions of the court to the jury were, under the facts of the case, misleading and erroneous; and that the verdict of the jury, which was in favor of D., was not sustained by sufficient evidence.

### *Error from Doniphan District Court.*

APRIL 7, 1882, defendant *Dieter* had judgment in the district court against *Babcock*, who brings it here for review. The opinion states the facts.

*Franklin Babcock,* and *B. A. Seaver,* for plaintiff in error.

*Ryan & Wood,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: In March, 1875, a judgment was rendered in favor of Walter K. Marvin and against Robert Armstrong (executor of the estate of James Fulton) and others, foreclosing a mortgage on certain real estate. On March 1, 1879, an order of sale was issued on such judgment; and on April 7, 1879, the land was sold by the sheriff under said order of sale to said Walter K. Marvin; and on April 10, 1879, such sale was confirmed by the court; and on June 3, 1879, the sheriff executed to Marvin a deed for the land, which deed was recorded on the same day. At the time of the execution of this deed, the land was occupied by certain tenants of Armstrong, under an agreement with him that they should cultivate Indian corn upon the land, and should deliver to him a portion of the corn as rent for the premises. It is admitted by all the parties, that unless there was some agreement or understanding between Marvin and Armstrong, giving to the latter the rent for the premises for that year, that Marvin, by virtue of his sheriff's deed, would be entitled to such rent. (*Smith v. Hague,* 25 Kas. 246.) There was no evidence introduced tending to show that there was any contract or understanding between Marvin and Armstrong, that Armstrong was to receive the rent; but on the contrary, there was evidence introduced tending to show that Marvin was to receive such rent. However, about the last of Octo-

ber or the first of November, 1879, Armstrong agreed to sell
and deliver to Peter Dieter six hundred bushels of corn.  No
particular corn was sold, and nothing was said as to where
the corn was raised, or as to where it was to come from; and
Dieter had no knowledge with respect to these matters.  Im-
mediately afterward, however, Franklin Babcock, as agent
of Marvin, notified all the parties—the tenants, Dieter and
Armstrong—that Marvin claimed the rent, and told the ten-
ants not to deliver the rent to Armstrong or Dieter.  After-
ward, and on November 8, 1879, Babcock, as the agent of
Marvin, wrote a letter to Dieter, informing him that Marvin
claimed the corn raised on said land, and warning Dieter not
to receive such corn from Armstrong or the tenants occupy-
ing the land, and that if he did, Marvin would hold him re-
sponsible.  In answer to this letter, Dieter sent to Babcock
the following letter, to wit:

"WATHENA, KANS., Nov. 11, 1879.
"MR. FRANKLIN BABCOCK—*Dear Sir*: Your letter,
dated Troy, Kansas, Nov. 8, and mailed at Leona, Kansas,
Nov. 10, was received to-day.  Allow me to inform you that
I have bought 600 bushels of corn (more or less) of Robert
Armstrong.  But I did not ask Mr. A. on what quarter-sec-
tion the corn was raised, nor do I care.
"Yours, etc.,      PETER DIETER."

At the time this letter was written and received, Dieter
had received one load of the corn; and afterward he received
other corn, delivered for Armstrong by the said tenants, until
he received in all 454 bushels and 13 pounds.  Afterward,
Marvin sold and transferred his claim for the corn to Frank-
lin Babcock, who is the plaintiff in this action.  Afterward,
and at some time during the year 1881, Babcock commenced
this action before a justice of the peace against Dieter for
the value of the corn received by Dieter from Armstrong
and the said tenants.  After judgment in the justice's court,
the case was appealed to the district court, where the same
was tried before the court and a jury.  The court gave the
following, among other instructions, to the jury:

"5. By the conveyance of the land June 3, 1879, the title to the crop growing thereon passed to the purchaser, Marvin, unless there was some agreement to the contrary between said Armstrong and said Marvin, or his said attorney and agent acting for him; and if the title so passed to said Marvin, then said Armstrong had no right to sell or dispose of said corn, unless there was some agreement or understanding between him and said Marvin or his said attorney acting for him, that he might do so; and if said Armstrong as executor had no title to the corn and no authority express or implied from Marvin or his said attorney and agent to sell it, then the defendant acquired no right thereto by paying Armstrong for the same; and in such case the plaintiff is entitled to recover the value of said corn, so received by the defendant.

"6. But if there was any agreement between said Armstrong, as executor, and said Marvin, or his said attorney and agent, at or before the execution of the sheriff's deed, that said Armstrong, as executor, was to have the growing crops; or if there was an agreement, express or implied, either before or after the date of said deed between said Armstrong, as executor, and said Marvin or his said agent and attorney, that said Armstrong, as executor, was to have the right to control or dispose of said crop, then the defendant would acquire a good title thereto by the purchase from said Armstrong.

"7. Touching the subject of an implied contract or agreement for the sale, value or disposition of the corn by said Armstrong, it may be said that if the said Marvin or his said attorney and agent never took possession of said land prior to the delivery of the corn to the defendant, and did not exercise any acts of ownership over the land, nor assume to control the same or the crops thereon, but left said Armstrong in the peaceable and quiet possession of the land, and control of the crops thereon, and under such circumstances the defendant bought and paid for the corn before he had any notice or knowledge of any claim of the said Marvin thereon, then in such case said Armstrong might properly be said to have an implied authority to sell or dispose of said corn; and in such case the plaintiff cannot recover."

The jury found a verdict in favor of the defendant and against the plaintiff, and judgment was rendered accordingly. The plaintiff brings the case to this court for review.

There are many other facts involved in this case, and many

questions of law presented by counsel for the plaintiff, which we do not think it necessary to state or consider, for, as we think, the case may be properly disposed of on the facts above stated, and by deciding only one or two of the principal questions presented in the case.

We think the court below erred in its instructions to the jury. It erred in giving instructions not based upon the evidence, and, to some extent, against the evidence. The jury in all probability were misled by these instructions, and for that reason found a verdict not sustained by sufficient evidence. As before stated, there was no evidence tending to show that there was any agreement, contract or understanding between Marvin and Armstrong, that Armstrong should have the crops growing on the land; but the evidence tended to show directly the reverse, and that Marvin should have the growing crops; and there was no evidence introduced tending to show that Dieter purchased any particular corn; but the evidence conclusively showed that he purchased, or agreed to purchase, 600 bushels of corn in general, without reference to where it was raised, or who produced it, or where it was to come from. He did not purchase the specific corn that was then growing or had been grown on the premises purchased by Marvin, but he simply purchased, or agreed to purchase, 600 bushels of corn in general, which might have been grown on any land in Kansas or elsewhere; but when the corn which had in fact been grown on Marvin's premises was actually delivered to Dieter, Dieter then knew that it was a part of the corn raised on Marvin's premises, and that it was rent corn, and that Marvin claimed it; or at least if he did not know these things, he had sufficient notice thereof to put him on inquiry. At the time he received said corn, or at least at the time he received the most of it, he was bound to know that it was Marvin's corn. He received the corn with his eyes open, and should now pay for the same.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.